## Case No. 10,432.

### ODIORNE v. WINKLEY.

[2 Gall. 51;[1] 1 Robb, Pat. Cas. 52.]

Circuit Court, D. Massachusetts. May Term, 1814.

PATENTS — LIMITATION TO PARTICULAR IMPROVEMENT—IDENTITY OF TWO MACHINES—WITNESS—COLLATERAL QUESTION TO TEST CREDIBILITY.

1. A witness cannot be asked a collateral question not relevant to the matter in issue, barely to test his credibility.

See Crowley v. Page, 7 Car. & P. 789; Harris v. Tippett, 2 Camp. 637; Com. v. Buzzell, 16 Pick. 157; Ware v. Ware, 8 Greenl. 42; Howell v. Lock, 2 Camp. 14; Perigal v. Nicholson, Wightw. 64; Greenl. Ev. § 423, and cases cited in note.

[Cited in Union Pac. Ry. Co. v. Reese, 5 C. C. A. 510, 56 Fed. 291.]

[Cited in Linn v. Gilman, 46 Mich. 633, 10 N. W. 46; Van Wyck v. McIntosh, 14 N. Y. 447.]

2. The original inventor, is, at all events, entitled to the patent for his invention.

3. If a person invent an improvement only on a machine, he is not entitled to a patent of the whole machine.

See Whittemore v. Cutter [Case No. 17,601].
[Cited in brief in Stevens v. Head, 9 Vt. 175.]

4. The identity or diversity of two machines depends, not on the employment of the same elements of powers of mechanics, but upon the producing of the given effect by the same mode of operation, or the same combination of powers.

[Cited in Whitney v. Emmett, Case No. 17,-585; Hotchkiss v. Greenwood, 11 How. (52 U. S.) 269; Singer v. Walmsley, Case No. 12,900; Crompton v. Belknap Mills, Id. 3,-406; Converse v. Cannon, Id. 3,144; Willimantic Linen Co. v. Clark Thread Co., Id. 17,763.]

[Cited in Jackson v. Allen, 120 Mass. 75.]

[5. Cited in Whitney v. Emmett, Case No. 17,585, and in Davis v. Bell, 8 N. H. 503, to the point that a patent must not be broader than the invention, or it will be void, not only for so much as had been known or used before the ap-

plication, but also for the improvement really invented.]

[6. Cited in Delano v. Scott, Case No. 3,753, as to what defenses may be shown under the provisions of the sixth section of the act of 21st February, 1793, in a suit by a patentee for an infringement of his patent.]

Case for infringement of a patent right [No. 4,714] of one Jesse Reed for cutting and heading nails at one operation. The plaintiff claimed as assignee of said Reed. At the trial, the plaintiff produced and proved the patent of said Reed, dated the 22d of February, 1807, and an assignment to himself of the whole of Reed's patent right. He also proved, that the machine was a highly useful invention, and that the defendant used two machines, which, in the opinion of the plaintiff's witnesses, cut and headed nails at one operation, substantially upon the same principles, and by the same mode of operation, as the plaintiff's machines, though there were some differences in the structure and operations of some particular parts. The plaintiff also gave evidence of the value of the use of the machines, so used by the defendant, during the time stated in the declaration, and claimed damages to the amount of the value so proved. The defendant, in his defence, relied on three points: 1. That the machines used by him were not substantially, in principles and mode of operation, like the plaintiff's. 2. That if they were, still that the plaintiff ought not to recover, because the machines so used by him were the invention of one Jacob Perkins, under whom he claimed, who had invented, used and patented the same, long before the invention and patent of the said Jesse Reed; that Reed's patent was too broad, it including Perkins's invention aforesaid, upon which invention Reed had made some improvements, but could not thereby entitle himself to a patent for more than his improvement. 3. That Reed had surreptitiously obtained his patent for the discovery of another man, to wit, of Jacob Perkins. The defendant filed a specification of special matter to be given in evidence under the general issue. The defendant then produced and proved a patent to Jacob Perkins, dated the 14th of February, 1799, and models were introduced, and exhibited to the jury, of Reed's machine, and Perkins's machine,—and a number of witnesses were examined by each party, to prove the identity or diversity of the two machines, in all substantial respects, in their principles and modes of operation. One of the defendant's witnesses, Allan Pollock, having been examined, and having testified, that in his judgment the principles and modes of operation of both machines were substantially the same, and having, with reference to the models before him, explained his reasons for his opinion, and described the powers, principles and adjustments of both machines, the counsel for the plaintiff produced the model of another nail machine, invented and used by a third person, under whom nei-

---

[1] [Reported by John Gallison, Esq.]

ther party claimed, long before the machine either of Reed or of Perkins existed, and proposed to interrogate the witness, as to the principles and mode of operation of said machine, and how far it coincided with, or differed from Perkins's machine; in order, as the counsel stated, to show by his answers, and by other testimony, the incorrectness of the witness in his preceding examination, and in his knowledge of mechanics, and to enable the jury the more fully to estimate the testimony of the witness. This was objected to on the part of the defendant's counsel.

Mr. Fairbanks and B. Whitman, for plaintiff.

Selfridge & Prescott, for defendant.

STORY, Circuit Justice. I am of opinion, that it is an improper inquiry, and overrule it. It can, at best, amount to no more, than going into collateral inquiries, not relevant to the matter in issue, barely to prove a witness to be incorrect. And I hold it a clear rule of law that a witness cannot be asked, as to a mere collateral fact, having no relevancy to the issue, in order to draw from him an answer, which might, by other evidence, be shown incorrect, and thereby to discredit him. Besides, if the inquiry were gone into, it would embarrass the jury, by drawing their attention to the principles of a machine not in controversy before the court, and, whichever way the question as to such machine might be settled, it could have no legal tendency to prove the identity or diversity of the two machines in controversy.[2]

STORY, Circuit Justice (charging jury). The first question for consideration is, whether the machines used by the defendant are substantially, in their principles and mode of operation, like the plaintiff's machines. If so, it was an infringement of the plaintiff's patent to use them, unless some of the other matters offered in the defence are proved. Mere colorable alterations of a machine are not sufficient to protect the defendant. The original inventor of a machine is exclusively entitled to a patent for it. If another person invent an improvement on such machine, he can entitle himself to a patent for such improvement only, and does not thereby acquire a right to patent and use the original machine; and if he does procure a patent for the whole of such a machine with the improvement, and not for the improvement only, his patent is too broad, and therefore void. It is often a point of intrinsic difficulty to decide, whether one machine operates upon the same principles as another. In the present improved state of mechanics, the same elements of motion, and the same powers, must be employed in almost all machines. The lever, the wheel, and the screw, are powers well known; and if no person could be enti-

tled to a patent, who used them in his machine, it would be in vain to seek for a patent. The material question, therefore, is not whether the same elements of motion, or the same component parts are used, but whether the given effect is produced substantially by the same mode of operation, and the same combination of powers, in both machines. Mere colorable differences, or slight improvements, cannot shake the right of the original inventor. To illustrate these positions; suppose a watch was first invented by a person, so as to mark the hours only, and another person added the work to mark the minutes, and a third the seconds; each of them using the same combinations and mode of operations, to mark the hours, as the first. In such a case, the inventor of the second-hand could not have entitled himself to a patent embracing the inventions of the other parties. Each inventor would undoubtedly be entitled to his own invention and no more. In the machines before the court, there are three great stages in the operations, each producing a given and distinct effect; 1. The cutting of the iron for the nail; 2. The griping of the nail; 3. The heading of the nail. If one person had invented the cutting, a second the griping, and a third the heading, it is clear, that neither could entitle himself to a patent for the whole of a machine, which embraced the inventions of the other two, and, by the same mode of operation, produced the same effect; and, if he did, his patent would be void. Some machines are too simple to be thus separately considered; others again are so complex, as to be invented by a succession of improvements, each added to the other. And, on the whole, in the present case, the question for the jury is, whether, taking Reed's machine, and Perkins's machine together, and considering them with their various combinations, they are machines constructed substantially upon the same principles, and upon the same mode of operation. If they are, then Reed's patent is void, and the plaintiff is not entitled to recover; and the finding of the jury upon the first special point stated in the defendant's specification of defence must essentially depend upon their decision upon this question.

As to the question, whether the patent was surreptitiously obtained, there is no direct or positive proof, that Reed had ever seen Perkins's machine before he obtained a patent, but there is evidence, from which the jury may legally infer the fact, if they believe that evidence. It is a presumption of law that when a patent has been obtained, and the specifications and drawings recorded in the patent office, every man, who subsequently takes out a patent for a similar machine, has a knowledge of the preceding patent. As in chancery it is a maxim, that every man is presumed to have notice of any fact, upon which he is put upon inquiry by documents within his possession, if such fact could, by ordinary diligence, be discovered upon such inquiry. It is also a

[2] See, s. p., Rex v. Watson, 2 Starkie, 149–151; Spenceley v. De Willott, 7 East, 108.

presumption of fact, that every man, having within his power the exact means of information, and desirous of securing to himself the benefit of a patent. will ascertain for his own interest, whether any one on the public records has acquired a prior right.

The jury will judge, under all the circumstances of this case, whether either or any of the points of defence are sustained by the evidence; and if so, they will find their verdict accordingly. If they find a verdict for the plaintiff, the court will treble the damages.

Verdict for the defendant.
A motion for a new trial was afterwards made and abandoned, and judgment was entered upon the records of a vacatur of the patent.
[For another case involving this patent, see Case No. 10,430.]