TRANSMATIC, INC., Plaintiff,

v.

GULTON INDUSTRIES, INC., Defendant.

No. 90–70987.

United States District Court,
E.D. Michigan, S.D.

Nov. 8, 1993.

Owen E. Perry, Troy, MI, for plaintiff.

William F. Dudine, Jr., New York City, for defendant.

## MEMORANDUM OPINION REGARDING USE OF ADVISORY JURY

ROSEN, District Judge.

### I. INTRODUCTION

This case is an action for infringement of a patent covering a lighting fixture for buses. Plaintiff, Transmatic Inc., filed its original complaint on April 10, 1990 requesting injunctive relief and damages; Plaintiff also made a demand for a jury trial.

After a lengthy and laborious period of discovery and pre-trial motions, this Court on March 31, 1993, granted partial summary judgment to Plaintiff on the issue of the patent's validity over prior art, holding that the patent-in-suit was not obvious from prior art. However, the Court granted partial summary judgment to Defendant, Gulton Industries, Inc., on the issue of literal infringement, holding that its device did not literally infringe Plaintiff's patent. *Transmatic, Inc. v. Gulton Industries, Inc.*, 818 F.Supp. 1052 (1993).

This left for resolution by trial the issues of: Plaintiff's claim of infringement under the doctrine of equivalents; Defendant's defense of inequitable conduct; whether Defen-

dant's conduct in allegedly infringing the patent was willful; and any damages which might flow from a finding of infringement and willfulness.

On August 31, 1993, Defendant filed a motion to bifurcate trial and to try the issues of infringement by the equivalents and inequitable conduct before the Court. Plaintiff opposed this motion in a brief filed on September 17 and Defendant replied on September 22. At the final pretrial conference on this case held on September 23, 1993, the Court informed the parties that it would use an advisory jury on all matters in dispute. The Court issued an Order to this effect on October 4, 1993. That Order specifically provided: "The Court will impanel an advisory jury on the issues of liability and damages.... [O]nce the jury has given its verdict on liability and damages, the Court will treat this verdict as an advisory opinion."

Trial began in this case on October 25. On Monday, November 1, 1993, after more than a week of trial and after the close of its proofs, Plaintiff argued that the issue of willfulness was for the jury and not the court and that the jury's verdict on willfulness should be binding on the Court. Defendant objected, claiming it would be prejudiced because in preparing and presenting its case it relied upon the Court's October 4, 1993 Order directing that all issues were to be tried to the Court with an advisory jury.

Because of the uncertainty generated by this question, and the unsettled nature of the law in the division of responsibility between court and jury in these patent areas, the Court determined that it was in the interest of a clear record to issue this Memorandum Opinion and fully set forth the bases of the Court's rulings.

## II. *DISCUSSION*

### 1. *Plaintiff Has Waived Its Right To A Jury Trial By Not Objecting To The Court's Order Establishing An Advisory Jury Before Trial.*

■ As an initial matter, the Court notes that although Plaintiff asserted that it had a

right to a jury trial in its brief in opposition to bifurcation of the trial on the grounds that there were legal claims in issue, Plaintiff did not object to, or seek to clarify, any portion of the Court's October 4, 1993 Order denying Defendant's motion for bifurcation and calling for an advisory jury on all liability and damages issues. It was only after more than a week of trial, after Plaintiff had closed its proofs, that Plaintiff objected to the advisory jury, and even then its objection was solely on the grounds that the issue of willfulness should be for the jury.[1]

The Sixth Circuit has held on at least two occasions that failure to object to a court order establishing a bench trial is waiver of the right to trial by jury. In *Sewell v. Jefferson County Fiscal Court*, 863 F.2d 461 (6th Cir.1988), *cert. denied*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989), the court analyzed Fed.R.Civ.P. 39(a), which states:

> The trial of all issues so demanded shall be by jury, unless ... the parties or their attorneys of record, by written stipulation made in open court and entered on the record, consent to trial by the court sitting without a jury.

The *Sewell* court continued with the following analysis:

> The requirements of Rule 39(a) have "been interpreted broadly so as to encompass orders entered by the court and not objected to." ... In the instant case, the counsel for the plaintiff made an oral motion for a continuance of the trial date during the final pretrial conference on September 15, 1986. The court granted the motion orally, and then entered a written order on September 17, 1986 which stated that the case was continued until January 22, 1987 *"for a trial before the court."* The court's order of September 17, 1986 was binding on all parties ... and constituted a "sufficient entry in the record to satisfy the requirements of Fed.R.Civ.P. 39(a)." ...

863 F.2d at 466 (emphasis in original).

■ The Sixth Circuit recently reaffirmed this approach in *Mensah v. Shepard*, 1991 WL 193751 (6th Cir.1991):

**1.** Local Rule 7.1(h) requires that any motion to alter or amend a judgment (or order) or for rehearing or reconsideration "shall be served not

later than 10 days after entry of such judgment or order."

Although Mensah's amended complaint contained a timely request for a jury trial, Mensah waived his right to a jury trial by failing to object to the district court's pretrial order scheduling a bench trial. *A litigant waives his or her right to a jury trial, even after making a timely demand for a jury trial, by failing to object to a district court's written pretrial order providing for a bench trial.* 1991 WL 193751, *1 (emphasis added). These cases clearly indicate that a failure to timely object to a court order establishing a bench trial is a waiver of trial by jury.

Plaintiff had notice that this Court was going to use an advisory jury as early as the September 23, 1993 final pretrial conference. An Order was entered to that effect on October 4. Yet Plaintiff waited until more than a week into trial, more than a month after the September 23 conference, and almost a month after the October 4 Order, to claim that it believed the issue of willfulness would and should be for the jury.

Given the fact that this case has been on the court's docket for more than three years now and virtually every discovery and pretrial ruling has been vigorously contested by both parties, including through motions for reconsideration, this Court believes that Plaintiff has waived the issue of whether the jury should be advisory on all matters in this case by not objecting to, or seeking to clarify, the Court's Order within 10 days, as required by the Local Rule, or at least prior to trial.

### 2. *Plaintiff Does Not Have A Right To A Jury Trial On Any Matter Left In This Case.*

Even assuming, *arguendo*, that Plaintiff did timely object to an advisory jury on the issue of willfulness or any other issue, the Court nevertheless believes that, given the issues left for trial, Plaintiff still does not have a right to a jury trial on this or any other issue remaining in the case. The Court will observe, however, that the road to this conclusion is not a clear one because of the lack of clear direction in the cases.

The starting point of analysis is with the Seventh Amendment to the U.S. Constitution, which guarantees that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." In interpreting whether the Seventh Amendment provides a party the right to a jury trial, the U.S. Supreme Court has developed a two-prong test. First, a court must examine the case to see if it would have arisen in law or equity in 1791 when the Seventh Amendment was adopted. Second, and more importantly, a court must look at the relief requested to see if it is legal or equitable. *Chauffeurs, Teamsters & Helpers, Local 391 v. Terry,* 494 U.S. 558, 563–67, 110 S.Ct. 1339, 1344–45, 108 L.Ed.2d 519 (1990).

Applying this test, the Court believes that an action for infringement under the doctrine of equivalents is one that arises in equity. Therefore, no right to a jury attaches.

The Court arrives at this decision through a number of analytical avenues. First, a review of numerous cases from the Federal Circuit indicates that the doctrine of equivalents is an equitable theory of recovery for the infringement of a patent. For example, a recent case from the Federal Circuit, *Charles Greiner & Co. v. Mari–Med Mfg.,* 962 F.2d 1031 (Fed.Cir.1992), explained the origins and underlying purpose of the doctrine:

> The doctrine of equivalents is an equitable doctrine that prevents fraud on a patent.... The doctrine traces its earliest origins to Supreme Court Justice Joseph Story. Presiding over a trial as a circuit justice, Justice Story stated:
>
> > Mere colorable differences, or slight improvements, cannot shake the right of the original inventor.
>
> *Odiorne v. Winkley,* 18 F.Cas. 581, 582 (C.C.D.Mass.1814) (No. 10,432) (Story, C.J.) Justice Bushrod Washington, also sitting as a circuit justice, seems to have enunciated the same principle. *See Gray v. James,* 10 F.Cas. 1015, 1016 (C.C.D.Pa. 1817 (No. 5718) (Washington, C.J.) (charging jury) ("[w]here the [accused and the claimed] machines are substantially the same, and operate in the same manner to produce the same result, they must be in principle the same.").

In 1950, the doctrine underwent a modern rebirth in *Graver Tank [& Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 70 S.Ct. 854, [94 L.Ed. 1097] (1950)]. The Supreme Court there traced the doctrine back to its Supreme Court origins in *Winans v. Denmead*, 56 U.S. (15 How.) 330, 14 L.Ed. 717 (1854). *Graver Tank*, 339 U.S. at 608, 70 S.Ct. at 856. Whether in its earliest manifestations or its more recent rebirth, the doctrine retained its traditional equitable limits. It prevented "fraud on the patent." *Id.* Specifically, it prevented a copyist from evading patent claims by what the Court believed to be insubstantial changes. *Id.*

Greiner, 962 F.2d at 1036.

Thus, in the eyes of the Federal Circuit, the doctrine of equivalents is clearly a cause of action that evolved out of, and remains in, equity. *See also International Visual Corp. v. Crown Metal Mfg. Co., Inc.*, 991 F.2d 768, 774 (Fed.Cir.1993) (Lourie, J., concurring) ("In recent years we have emphasized that the doctrine [of equivalents] is equitable in nature."); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 935 (Fed.Cir.1987) ("'the doctrine of equivalents is designed to do equity, and to relieve an inventor from a semantic strait jacket when equity requires....'") (quoting *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532–33 (Fed.Cir.1987)), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

The Court also believes that the doctrine of equivalents is equitable because the cause of action in existence in 1791 that is most analogous to it is reformation of a contract in equity. *See American Cas. Co. v. Glaskin*, 805 F.Supp. 866, 872 (D.Colo.1992) (noting that contract reformation arose in equity). As stated by the Federal Circuit, "The purpose and function of the reformation of a contract is to make it reflect the true agreement of the parties on which there was a meeting of the minds." *American President Lines, Ltd. v. United States*, 821 F.2d 1571, 1582 (Fed.Cir.1987).

The Court believes that a patent can usefully be analogized to a contract between the inventor and the government which defines the rights and limitations of an inventor's exclusive ownership rights in his invention. The doctrine of equivalents effectively rewrites, or reforms, this patent contract to more fully reflect the agreement between the inventor and the public which the patent represents. Just as contract reformation is an issue for the court and not the jury, *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1502 (5th Cir.1992), so too, then, is the doctrine of equivalents one for the court.

When this case was filed, the complaint contained allegations of both literal infringement and infringement by the equivalents, only the latter of which survived summary judgment. A jury trial, then, was not mandated by the Seventh Amendment because only an equitable claim was in dispute at the time of trial.

The Supreme Court has implicitly noted that when only equitable issues are before the court at the commencement of trial, the right to a jury no longer applies. In *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), the Supreme Court confronted a case in which a plaintiff brought race discrimination claims under § 1981 and Title VII. It noted that the trial court improperly dismissed the legal claim, § 1981, before conducting a strictly bench trial on the equitable claim of breach of Title VII. The Court's analysis, however, suggests to this Court that had the trial judge properly dismissed the § 1981 claim, it was clearly not reversible error to try the Title VII claim without a jury:

> When legal and equitable claims are joined in the same action, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." ... *Further, had the § 1981 claims remained in the suit, a jury would have been required to resolve those claims before the court considered the Title VII claims ....*

494 U.S. at 549, 110 S.Ct. at 1335 (emphasis added) (citation omitted). Because no legal claim survived summary judgment in this case, trial before the bench and the bench alone was proper.

The Court recognizes that in a number of cases the issue of equivalent infringement has gone to the jury without specific comment by the court on this issue. *See, e.g., Jurgens v. McKasy,* 927 F.2d 1552, 1561 (Fed.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991); *Lear Sigler, Inc. v. Sealy Mattress Co. of Michigan,* 873 F.2d 1422, 1426 (Fed.Cir.1989); *Richardson v. Suzuki Motor Co., Ltd.,* 868 F.2d 1226, 1238 (Fed.Cir.1989), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1990), *Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 760–61 (1984).

However, in all the cases the Court has reviewed in which the jury rendered a verdict on the doctrine of equivalents, at least one legal issue, usually literal infringement, was still a part of the case. The Court notes that Rule 39(a) states that "the trial of all issues so demanded shall be by jury, unless ... the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist...." While the Court is, of course, uncertain of what occurred in these other cases, it appears that the right to jury trial issue simply did not arise as an issue in these cases.

The Court also acknowledges that at least one judge of the Federal Circuit, and one brother District Judge in the Eastern District of Louisiana, appear to believe that a jury trial right does exist with respect to the doctrine of equivalents. In *Malta v. Schulmerich Carillons, Inc.,* 952 F.2d 1320, 1328 (Fed.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2942, 119 L.Ed.2d 566 (1992), the court upheld a judgment notwithstanding the verdict that Defendant did not infringe the patent by the equivalents.[2] In a dissenting opinion, Judge Newman stated:

[T]he right to jury trial of [equivalence cannot] be extinguished because the doctrine of equivalence was "judicially devised to do equity." *The jury has historically been charged with the factual inquiry of equivalency:*

> The question whether one thing is a mechanical equivalent for another is a question of fact for the jury, on the testimony of experts, or an inspection of the machines; and it is an inference to be drawn from all the circumstances of the case, by attending to the consideration, whether the contrivance used by the defendant is used for the same purpose, performs the same duties, or is applicable to the same object, as the contrivance used by the patentee.

952 F.2d at 1345 (Newman, J., dissenting) (emphasis added) (quoting G. Curtis, *A Treatise on the Law of Patents,* ch. VIII, § 310 at p. 405 (4th ed. 1973)).

In *Laitram Corp. v. Hewlett–Packard Co., Inc.,* 806 F.Supp. 1286, 1290 (E.D.La.1992), Judge Feldman apparently indicated his belief, albeit in dicta, that the doctrine of equivalents was a question for the jury and not the court when he stated, as part of a decision on a motion for summary judgment, that: "the resolution of the [doctrine of equivalents] test is also one of fact and this Court must be hesitant to usurp that interpretation from the jury." Again, this Court believes *Laitram* is distinguishable because the issue of whether equivalence is a purely equitable claim did not arise and because there were legal claims attached to the equivalence claim.

With due respect to these apparent views, this Court believes that the other opinions by the Federal Circuit characterizing the doctrine of equivalents as an equitable theory are more controlling and persuasive.[3]

Those judges and academics who do seem to find a jury trial right in a trial of infringement by the equivalents appear to base this view on the ground that a determination of the equivalence is a question of fact and,

---

**2.** At trial, the claims of both literal and equivalence infringement went to the jury. 952 F.2d at 1323.

**3.** Indeed another Judge on the Federal Circuit argued that the doctrine of equivalents was equitable in a more recent opinion:

> In recent years, we have emphasized that the doctrine is equitable in nature. * * * The district court is in the best position to determine whether there are any equities that argue for or against its application.
>
> *International Visual Corp.,* 991 F.2d at 774–75 (Lourie, J., concurring).

therefore, requires a factual inquiry and resolution.

This Court believes that the reliance placed upon the factual nature of the inquiry in determining infringement by the equivalents as providing a jury trial right is misplaced. Clearly infringement under any theory is a question of fact. However, just because a dispute is factual in nature does not mean that a jury must decide and resolve the facts. A court sitting in equity in any case—for example, in a contract reformation case or in a (pre–1991 Civil Rights Act Amendments) Title VII case—finds facts in the same way a jury would in a common law action. Thus, in this context, the court versus jury distinction focuses not on what is a question of fact and what is a question of law—in a jury trial, questions of fact are always for the jury. Rather, the inquiry in this context must focus on the nature of the claim at issue to determine if there is a jury trial right. Here, it is clear from the evolution of the doctrine through the decisional precedents that the surviving claim of infringement by the equivalents is equitable in nature. Therefore, this Court holds that no jury right attaches to the doctrine of equivalents.

■ The issue of inequitable conduct also is a strictly equitable matter to which there is no right to jury trial. The parties do not dispute this fact, nor should they given the clear guidance from the Federal Circuit. *Paragon Podiatry Lab. v. KLM Labs.*, 984 F.2d 1182, 1190 (Fed.Cir.1993) ("The defense of inequitable conduct, being entirely equitable in nature, is not an issue for a jury to decide.").

■ Equally challenging is the question of whether disputes over willful infringement and damages necessitate a jury trial where the underlying claim of liability and defense are equitable. With respect to damages, *Chauffeurs, supra*, teaches that the remedy sought in a case is the more important factor to consider in evaluating whether a right to a jury exists. Plaintiff has requested an injunction in this case, but also has made a demand for lost profits and royalties. Therefore, a case could be made that Plaintiff had a right to a jury trial on the issue of damages

even though the underlying claim of recovery was equitable. Although the Court understands the question to be a close one, it believes that given the equitable nature of the claims being tried, the remedy sought by Plaintiff must also sound in equity.

In *Chauffeurs, supra*, the Supreme Court discussed at length when an award of monetary damages could be deemed equitable. The Court confronted a case in which an employee brought a duty of fair representation claim against his union and demanded back pay and benefits. After determining that a duty of fair representation claim involved both historically legal and equitable claims, the Court turned to the remedy plaintiffs sought in order to evaluate whether a right to jury trial existed. The Court stated:

First, we have characterized damages as equitable where they are restitutionary, such as in "action[s] for disgorgement of improper profits,".... The backpay sought by respondents is not money wrongfully held by the Union, but wages and benefits they would have received from [the employer] had the Union processed the employees' grievance properly. Such relief is not restitutionary.

Second, a monetary award "incidental to or intertwined with injunctive relief" may be equitable.... Because respondents seek only money damages, this characteristic is clearly absent from the case.

494 U.S. at 570, 110 S.Ct. at 1348 (citations omitted).

Another court in *Swan Brewery Co., Ltd. v. U.S. Trust Company of New York*, 143 F.R.D. 36 (S.D.N.Y.1992) has recently expanded on this analysis. *Swan Brewery* involved an action for breach of trust and breach of an agreement to hold funds in trust. In examining Plaintiff's damage claims, the court stated:

[Plaintiff] seeks relief on these claims in the form of money damages, which are generally considered legal in nature. [*Chauffeurs*], 494 U.S. at 570, 110 S.Ct. at 1347. However, an award of monetary relief is not necessarily "legal" relief. *Id.* Actions for damages may be characterized as equitable in nature where (1) the dam-

ages sought are in the nature of restitution, as in actions for *disgorgement of improper profits* or money wrongfully withheld and (2) a monetary award is "incidental to or intertwined with injunctive relief." [*Chauffeurs,* 494 U.S.] at 571, 110 S.Ct. at 1348 (quoting *Tull v. United States,* 481 U.S. 412, 424, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987)).

While [Plaintiff] makes much of the fact that the damages sought here lack the second attribute of equitable relief articulated in [*Chauffeurs*], it ignores the fact that they are in the nature of restitution. Specifically, [Plaintiff] seeks the return of the retained portion of the Overpayment [it paid to Defendant], allegedly wrongfully held by [Defendant].

143 F.R.D. at 41 (emphasis added). *Chauffeurs* and *Swan Brewery,* then, stand for the proposition that where a claim for damages is essentially restitutionary and is intertwined with clearly equitable relief, a jury trial right does not attach.

The Court believes that this case is one in which no jury right exists because at the time of the filing of the complaint, the most critical aspect of the relief sought, as well as the underlying claims and defenses, were equitable in nature. Plaintiff requested an injunction, something that is clearly an equitable remedy. Plaintiff also claimed lost profits, which in this case appears to the Court as restitutionary relief because Defendant's alleged infringement of its patent in effect took money out of Plaintiff's pocket by depriving it of its earlier dominant market position. Clearly, had the case been decided in favor of Plaintiff at the commencement of the infringement, Plaintiff's primary remedy would have been injunctive relief. Plaintiff's damage claims here are intended to replace, through restitution, the injunction which would have issued.

Plaintiff also claims royalties, but these are recoverable only if lost profits are not provable. *See Trell v. Marlee Elecs. Corp.,* 912 F.2d 1443, 1445 (Fed.Cir.1990). Thus, even if the Court characterizes royalties as a legal remedy, they are merely a form of alternative relief to an equitable remedy. Just as with lost profits, the money award that Plaintiff seeks is closely intertwined with its request for an injunction.

The Court adds that this case is distinguishable from *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). In that case, the plaintiff attempted to avoid a jury trial by casting his request for relief strictly in equitable terms: an injunction and an accounting. There was no question, however, that the underlying claim in the case was legal: a breach of contract, or alternatively, trademark infringement. 369 U.S. at 475–79, 82 S.Ct. at 899–900. Therefore, common law provided a sufficient remedy so as to prevent jurisdiction in equity.

This case is clearly very different. As analyzed above, the claim of infringement by the equivalents is one in equity. It evolved to provide a remedy to patent holders when their legal claim, literal infringement failed. Thus, this case is not one in which a party is seeking relief on a legal theory but attempting to get into equity by virtue of the window dressings it places on its damage claims. Rather, this is a case in which a plaintiff seeks equitable relief on an equitable claim.

Viewing this case in the totality of circumstances regarding the equitable nature of the underlying claim and defense and the remedies sought, this Court concludes that this is not a matter in which the Plaintiff has a Seventh Amendment right to a jury trial. The Court's October 4, 1993 Order requiring a bench trial with an advisory jury was proper under Fed.R.Civ.P. 39(c), which states: "In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury...."

■ Finally, the Court believes that given its holding that this is an equitable case, the issue of willful infringement is also one for the Court. It makes absolutely no sense to this Court to have to be bound by a jury verdict when the Court has already determined that no right to a jury trial exists on the basic issues in this case.

Plaintiff cites *Richardson v. Suzuki Motor Co., Ltd.,* 868 F.2d 1226, 1250 (Fed.Cir.1989), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1990) in support of its belief that willfulness is an issue for the jury. That

case indeed states that "Willfulness of behavior is a classical jury question of intent.... *When trial is had to a jury, the issue should be decided by the jury.*" 868 F.2d at 1250 (emphasis added). Thus, the case itself rebuts Plaintiff's argument. This is not a case which is "had to a jury." Rather, it is before the Court sitting with an advisory jury. Therefore, the jury's opinion on willfulness also need only be advisory.

■ Even if the Court is incorrect that the issue of willfulness in a doctrine of equivalents case is one for a court and not the jury, it is well-settled that the question of whether to award additional damages for willfulness is within the sole discretion of the trial court. In *Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991), for example, the plaintiff argued that the court should be bound by a jury's finding of willful infringement in deciding whether to grant additional damages. The Federal Circuit quickly rejected this notion: "This argument conveniently ignores our clear precedent that a finding of willful infringement merely *authorizes,* but does not *mandate,* an award of increased damages." 917 F.2d·at 543. Therefore, Plaintiff has suffered no injury by having the Court treat as advisory the jury's opinion on willfulness.

After careful consideration of the issues and a review of precedent, this Court concludes the following: (1) the claim of infringement by the equivalents as well as the defense of inequitable conduct are equitable theories; (2) the relief available and the question of willful infringement also sound in equity in a case under the doctrine of equivalents; and (3) there is thus no Seventh Amendment right to trial by jury in cases strictly involving this claim and this defense. The Court's October 4, 1993 Order calling for a bench trial of this case with an advisory jury was therefore appropriate.