LOURIE, Circuit Judge.
 

 Guitón Industries, Inc. appeals from the March 31, 1993 order of the United States District Court for the Eastern District of Michigan granting Transmatic, Inc.’s motion for partial summary judgment striking Gul-ton’s affirmative defense of invalidity with respect to claim 1 of reexamined U.S. Patent 4,387,415. Guitón also appeals from the court’s April 8, 1994 order (1) holding Guitón liable for infringement of claim 1 of the ’415 patent under the doctrine of equivalents, (2) holding that Transmatic did not engage in inequitable conduct so as to render the ’415 patent unenforceable, and (3) awarding Transmatic $3,023,773.00 in damages. Transmatic cross-appeals from the court’s March 31, 1993 order granting partial summary judgment of no literal infringement. Transmatic also cross-appeals from the court’s November 8, 1993 order holding that Transmatic had no right to a jury trial on the issue of willful infringement and from the court’s subsequent determination on the merits that Guitón did not willfully infringe the patent. The orders appealed from are reported at
 
 Transmatic, Inc. v. Gulton Indus., Inc.,
 
 818 F.Supp. 1052, 27 USPQ2d 1561 (E.D.Mich.1993);
 
 Transmatic, Inc. v. Guiton Indus., Inc.,
 
 835 F.Supp. 1026, 29 USPQ2d 1541 (E.D.Mich.1993), and
 
 Transmatic, Inc. v. Gulton Indus., Inc.,
 
 849 F.Supp. 526, 31 USPQ2d 1225 (E.D.Mich.1994). Because the district court failed to make sufficient factual findings in support of its damage award, we vacate the damage award and remand for further proceedings consistent with this opinion. We also reverse the finding of no literal infringement, vacate the finding of infringement under the doctrine of equivalents as moot, and affirm on the other issues raised.
 

 BACKGROUND
 

 Transmatic owns the ’415 patent directed to a cornice lighting fixture for public transit vehicles, such as buses. This type of lighting fixture is capable of supporting and illuminating an advertising card, while also illuminating the interior of the transit vehicle.
 

 Claim 1, the sole claim at issue, reads as follows:
 

 1. A cornice lighting fixture for public transit vehicles, the lighting fixture comprising: a unitary member made as a pul-trusion from resin and glass fibers so as to have an elongated shape with a uniform cross section along the length thereof, said unitary member including
 
 a light housing that defines one longitudinal margin of the fixture
 
 and a trim panel that extends vertically and horizontally from the light housing to define another longitudinal margin of the fixture, said light housing opening toward the direction in which light is to be provided by the fixture, said trim panel including one extremity defining the longitudinal fixture margin opposite the longitudinal fixture margin defined by the housing, said one extremity of the trim panel having a tab adapted to mount one edge of an advertising card on the trim panel, said trim panel also including another extremi
 
 *1273
 
 ty connected directly to the housing in a fixed relationship thereto and having another tab adapted to mount another edge of the advertising card such that the card is positioned immediately adjacent the light housing; an electrical connector support for mounting a fluorescent tube on the light housing; and a light cover for cooperating with the light housing to enclose a mounted fluorescent tube within the housing (emphasis added).
 

 Transmatic’s device was the first cornice lighting fixture to be made by “pultrusion,” a technique for making glass-reinforced plastics whereby continuous bundles of glass fibers are impregnated with a liquid resin, then passed through a high temperature oven.
 
 Hawley’s Condensed Chemical Dictionary
 
 977 (12th ed. 1993). The invention achieved considerable success, garnering a 90% share of the front-lighted bus fixture market before Guitón introduced its competing device. A cross-sectional view of a preferred embodiment of the patented fixture is shown below:
 

 [[Image here]]
 

 Gulton’s product is also a single-piece (unitary) cornice lighting fixture made as a pul-trusion from resin and glass fibers. Structurally, it is essentially the same as the preferred embodiment of Transmatic’s device disclosed in the ’415 patent, except that the light housing in Gulton’s device includes an approximately three and a half inch extension or flange. The flange extends the light housing to a point beyond a light cover associated with the light housing. Although Gul-ton’s own design drawings had labeled the flange as part of the light housing, Guitón characterized the flange during litigation as a component separate and distinct from the light housing itself. This distinction is the basis for the infringement decisions,
 
 see infra.
 
 A cross-sectional view of the accused product is shown below, with the key portion of the device indicated by an arrow:
 

 
 *1274
 
 [[Image here]]
 

 Before trial, the district court granted partial summary judgment in favor of Transmatic striking Gulton’s affirmative defense of invalidity and granted partial summary judgment of no literal infringement in favor of Gulton. 818 F.Supp. at 1060-68, 27 USPQ2d at 1567-74. Then, on October 4, 1993, although Transmatic had made a timely demand for a jury trial, the court issued an order advising the parties that it would conduct a bench trial with an advisory jury. Transmatic did not protest. On November 1, 1993, after more than a week of trial and after the close of Transmatic’s case-in-chief, Transmatic argued that the issue of willfulness was one for the jury and not the court to decide and that any jury verdict on willfulness should bind the court. The court disagreed, holding that Transmatic had no right to a jury trial on the willfulness issue or any of the other issues remaining in the case. 835 F.Supp. at 1027-33, 29 USPQ2d at 1542-47. At the conclusion of trial, the court held Guitón liable for infringement of claim 1 under the doctrine of equivalents, found the infringement to be not willful, and awarded Transmatic $3,023,773.00 in damages. 849 F.Supp. at 530-38, 543, 31 USPQ2d at 1227-34,1238-39. The court also held that Trans-matic did not engage in inequitable conduct so as to render the ’415 patent unenforceable.
 
 Id.
 
 at 538-43, 31 USPQ2d at 1234-38. This appeal and cross-appeal followed.
 

 DISCUSSION
 

 I.
 
 Gulton’s Appeal
 

 A. Validity
 

 On appeal, Guitón first challenges the district court’s grant of partial summary judgment striking Gulton’s affirmative defense of invalidity with respect to claim 1 of the ’415 patent. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c);
 
 Johnston v. IVAC Corp.,
 
 885 F.2d 1574, 1576-77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). Summary judgment may thus be granted when no “reasonable jury could return a verdict for the nonmoving party.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion,
 
 Poller v. Columbia Broadcasting Sys., Inc.,
 
 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), with doubts resolved in favor of the opponent,
 
 Cantor v. Detroit Edison Co.,
 
 428 U.S. 579, 582, 96 S.Ct. 3110, 3113-14, 49 L.Ed.2d 1141 (1976). We review
 
 de novo
 
 a district court’s grant of summary judgment.
 
 Conroy v. Reebok Int’l, Ltd.,
 
 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).
 

 After considering the prior art of record and Gulton’s arguments, the district court determined that, as a matter of law,
 
 *1275
 
 Guitón could not establish invalidity by clear and convincing evidence. Accordingly, the court granted partial summary judgment in favor of Transmatic, holding that claim 1 of the ’415 patent was not invalid. On appeal, Guitón argues,
 
 inter alia,
 
 that the court failed to consider the propriety of combining prior art references showing pultrusion techniques with those pertaining to lighting fixtures. In reply, Transmatic argues that the court correctly concluded that Guitón could not meet its burden of proving invalidity by clear and convincing evidence.
 

 We agree with Transmatic. It is apparent from the district court’s opinion that the court considered all the relevant prior art, including prior art references describing pul-trusion technology, in reaching its nonobvi-ousness determination. The court also took into account relevant secondary evidence of nonobviousness, particularly the failure of others to achieve the patented invention and the commercial success of the patented device. The claims twice passed scrutiny in the PTO, including a reexamination procedure in which Guitón participated as the requester. The patent is presumed valid. 35 U.S.C. § 282 (1988). Having carefully reviewed the record and the parties’ arguments, we conclude that there is no genuine issue of material fact relating to validity and that Trans-matic was entitled to judgment as a matter of law. We therefore affirm the court’s grant of summary judgment in favor of Transmatic.
 

 B.Inequitable Conduct
 

 Gulton also challenges the district court’s holding that Transmatic did not engage in inequitable conduct. We review the court’s ultimate conclusion concerning inequitable conduct under an abuse of discretion standard and its underlying factual findings for clear error.
 
 Amgen Inc. v. Chugai Pharmaceutical Co.,
 
 927 F.2d 1200, 1215, 18 USPQ2d 1016, 1028 (Fed.Cir.),
 
 cert. denied,
 
 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991). We have considered Gulton’s arguments, which we need not repeat here, and find them unpersuasive. Finding no abuse of discretion or clearly erroneous factual findings by the district court, we affirm the court’s determination that Transmatic did not engage in inequitable conduct.
 

 C. Infringement Under the Doctrine of Equivalents
 

 Guitón next argues that the district court erred in holding Guitón liable for infringement under the doctrine of equivalents. This question is moot because we conclude, for the reasons discussed in Part II below, that the court clearly erred in finding no literal infringement. We therefore vacate as moot that part of the court’s decision relating to infringement under the doctrine of equivalents.
 

 D. Damages
 

 Gulton also challenges the district court’s award of damages. We review the amount of the court’s damage award to determine whether it was based on clearly erroneous factual findings,
 
 see SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,
 
 926 F.2d 1161, 1164-65 n. 2, 17 USPQ2d 1922, 1925 n. 2 (Fed.Cir.1991), or whether in other respects it was based on an erroneous conclusion of law or a clear error of judgment amounting to an abuse of discretion.
 
 Amstar Corp. v. Envirotech Corp.,
 
 823 F.2d 1538, 1542, 3 USPQ2d 1412, 1415 (Fed.Cir.1987).
 

 Gulton argues,
 
 inter alia,
 
 that the court failed to support its damage award with sufficiently comprehensive factual findings pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. We agree. Rule 52(a) provides:
 

 In all actions tried upon the facts without a jury
 
 or with an advisory jury, the court shall find the facts specially
 
 and state separately its conclusions of law thereon.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous ....
 

 Fed.R.Civ.P. 52(a) (emphasis added).
 

 When, as here, trial is held before the district court with an advisory jury, the court must find the facts specially just as it would when conducting a bench trial without an advisory jury.
 
 See In re Incident Aboard the D/B Ocean King,
 
 758 F.2d 1063, 1072 (5th Cir.1985);
 
 H. Prang Trucking Co. v. Local Union No. 469,
 
 613 F.2d 1235, 1238-39 (3d Cir.1980). The requirement that the district court make factual findings permits meaningful review on appeal because this
 
 *1276
 
 court may not engage in fact-finding on its own.
 
 See Anderson v. City of Bessemer City,
 
 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (“The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court.... ‘[AJppellate courts must constantly have in mind that their function is not to decide factual issues
 
 de novo.’
 
 ”) (quoting
 
 Zenith Radio Corp. v. Hazeltine Research, Inc.,
 
 395 U.S. 100, 123, 89 S.Ct. 1562, 1576-77, 23 L.Ed.2d 129 (1969)).
 

 We have held that findings of fact satisfy Rule 52(a) when they are sufficiently comprehensive and pertinent to the issue in dispute to form a basis for the district court’s decision.
 
 Atlantic Thermoplastics Co. v. Faytex Corp.,
 
 5 F.3d 1477, 1479, 28 USPQ2d 1343, 1345 (Fed.Cir.1993). Furthermore, although the district court need not make elaborate findings on every factual issue raised, it must find and specify as many subsidiary facts as necessary to inform the reviewing court of the steps by which it determined factual issues and reached its ultimate conclusions.
 
 Id.
 

 In this case, the district court adopted the advisory jury’s verdict awarding $3,023,-773.00 in damages. The court noted that the advisory jury accepted the damages calculation of Transmatic’s expert, with two deductions that the court found reasonable. First, the advisory jury and the court found insufficient support for Transmatie’s claim that it would have been able to raise its product’s price at will had there been no competition from Guitón. Second, the advisory jury and the court rejected an award of damages stemming from Gulton’s sales of allegedly infringing luggage loft sets.
 

 Guitón argues that the court erred by not making certain adjustments to the lost profits damages claimed by Transmatic. Guitón contends, for example, that having rejected Transmatic’s claim for damages arising from price increases, the court should have deducted the $639,033.00 “sales price adjustment” component of Transmatic’s calculated damages, because this figure was based on price increases foregone as a result of competition. Similarly, Guitón asserts that Transmatic used inflated prices to calculate lost sales, resulting in Transmatic’s lost profits being overstated by an additional $689,-477.00, plus interest. Guitón also questions Transmatic’s treatment of the management fee and “allocated G & A” (general corporate overhead) as fixed costs, rather than costs that vary with sales.
 

 Presumably, the court considered and rejected these claimed adjustments to Trans-matic’s calculated lost profits. The court’s opinion only states, however, that “[t]he advisory jury ... apparently discarded these [adjustments] as unsupported by the evidence. This Court agrees with the advisory jury’s decision.” 849 F.Supp. at 543, 31 USPQ2d at 1239. In our view, the court’s findings and analysis on the damages issue and its summary rejection of Gulton’s evidence fail to meet the requirement that the court find the facts specially as required by Rule 52(a). In contrast to facts found by a jury, the court’s reliance on the advisory jury does not free it from compliance with the rule.
 
 See Incident Aboard the D/B Ocean King,
 
 758 F.2d at 1072;
 
 H. Prang Trucking Co.,
 
 613 F.2d at 1238-39. We cannot determine from the court’s opinion why Gulton’s asserted adjustments to Transmatic’s calculated lost profits are factually incorrect or otherwise unsupported by the evidence.
 

 Without more detailed findings and reasoning, we cannot evaluate the court’s damage award. We therefore vacate the court’s damage award and remand for the court to make further factual findings and reconsider the amount of the award, if appropriate, in light of the court’s supplemental findings.
 

 II. Transmatic’s Cross-Appeal
 

 A. Literal Infringement
 

 In its cross-appeal, Transmatic first challenges the district court’s grant of partial summary judgment of no literal infringement in favor of Guitón. The district court determined that Gulton’s device meets every limitation of claim 1 except for “a light housing that defines one longitudinal margin of the fixture.” In particular, the court found that although Gulton’s device includes a light housing, the device also includes a three and a half inch extension of the light housing (a
 
 *1277
 
 flange), which the court viewed as a separate component from the light housing itself. The court found no literal infringement on the ground that this flange, not the light housing, defines a longitudinal margin of the lighting fixture. In addition, the court determined that, because claim 1 requires that the light housing define a longitudinal margin of the fixture, the light housing must be attached to a transit vehicle by horizontal and vertical walls of the light housing, not by an extension of the light housing. The court also relied on the fact that “[i]n the [patented] fixture, the housing and trim panel formed an air duct for carrying heated or cooled air, but in the accused fixture, the extension alters the fixture in such a way that those portions of the fixture no longer form an air duct.” 818 F.Supp. at 1068, 27 USPQ2d at 1573.
 

 Transmatic contends that the court erred in its claim interpretation and thus improperly granted summary judgment for Guitón. Had the court properly construed claim 1, Transmatic argues, it would have determined that the claim literally covers the accused device. We agree.
 

 Determining whether a patent claim is infringed requires a two-step analysis: “First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.”
 
 Carroll Touch, Inc. v. Electro Mechanical Sys.,
 
 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Claim construction is a question of law, which we review
 
 de novo. Markman v. Westview Instruments, Inc.,
 
 52 F.3d 967, 979 (Fed.Cir. 1995) (in banc);
 
 Carroll,
 
 15 F.3d at 1577, 27 USPQ2d at 1839. In construing a claim, claim terms are given their ordinary and accustomed meaning unless examination of the specification, prosecution history, and other claims indicates that the inventor intended otherwise.
 
 See Carroll,
 
 15 F.3d at 1577, 27 USPQ2d at 1840. Literal infringement requires that the accused device include every limitation of the patent claim.
 
 Mannesmann Demag Corp. v. Engineered Metal Prod. Co.,
 
 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986).
 

 We find two basic errors in the court’s infringement analysis. First, the court erred in interpreting the claim term “light housing” as limited to a structure having an upper, horizontal wall that does not extend beyond a light cover associated with the light housing. While the preferred embodiment disclosed in the patent has this configuration, a patent claim is not necessarily limited to a preferred embodiment disclosed in the patent.
 
 See, e.g., Laitram Corp. v. Cambridge Wire Cloth Co.,
 
 863 F.2d 855, 865, 9 USPQ2d 1289, 1299 (Fed.Cir. 1988) (“References to a preferred embodiment, such as those often present in a specification, are not claim limitations.”),
 
 cert. denied,
 
 490 U.S. 1068, 109 S.Ct. 2069, 104 L.Ed.2d 634 (1989);
 
 Texas Instruments, Inc. v. United States Int’l Trade Comm’n,
 
 805 F.2d 1558, 1563, 231 USPQ 833, 835 (Fed.Cir. 1986) (“This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.”).
 

 Here, the patentee clearly did not intend to limit the definition of “light housing” in claim 1 in the manner suggested by the district court. The record does not support the court’s claim interpretation. Although claim 3 requires that the light housing have “a horizontal wall with an inward securement formation and also having a vertical wall extending downwardly from the outward extremity of the horizontal wall,” claim 1 contains no such structural limitations. Consistent with the claim differentiation doctrine, the term “light housing” in claim 1 is broader in scope than in claim 3 and the other dependent claims.
 
 See United States v. Telectronics, Inc.,
 
 857 F.2d 778, 783-84, 8 USPQ2d 1217, 1221-22 (Fed.Cir.1988),
 
 cert. denied,
 
 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 423 (1989);
 
 D.M.I., Inc. v. Deere & Co.,
 
 755 F.2d 1570, 1574, 225 USPQ 236, 239 (Fed.Cir. 1985) (‘Where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad....”) (quoting
 
 Deere & Co. v. International Harvester Co.,
 
 658 F.2d 1137, 1141, 211 USPQ 11, 16 (7th Cir.),
 
 cert. denied,
 
 454 U.S. 969, 102 S.Ct.
 
 *1278
 
 514, 70 L.Ed.2d 386 (1981)). Thus, the court erred by reading unnecessary structural limitations into claim 1.
 

 Second, the district court erred by importing unnecessary functional limitations into the claim. The court limited claim 1 to a lighting fixture configured to be attached to a vehicle by horizontal and vertical walls; however, the claim contains no limitations concerning how the device may be attached to a vehicle. The court also considered significant the apparently different air flow characteristics of the patented and accused devices. Again, this consideration was irrelevant because the claim contains no limitations regarding air flow. While differences in the way the patented invention and accused device function certainly are relevant to a doctrine of equivalents analysis, these considerations are not legally relevant to whether Gulton’s device falls within the
 
 literal
 
 language of the asserted claim.
 

 Without these extraneous structural and functional limitations, claim 1 reads directly on Gulton’s device. We are persuaded that the flange in Gulton's device is simply an extension of the light housing and thus part of it. Gulton’s own design drawings labeled the flange as part of the light housing. Gul-ton’s recharacterization of its light housing as being comprised of two separate components, light housing and flange, appears to be a litigation-induced interpretation to avoid infringement. Further, the light housing (with flange) clearly defines a longitudinal margin of the lighting fixture. Gulton’s device therefore includes “a light housing that defines one longitudinal margin of the fixture.” As this is the only claim limitation in dispute, we conclude that no reasonable fact-finder could conclude that Gulton’s product does not meet each and every limitation of claim 1 of the ’415 patent.
 

 Clearly, there was no genuine issue of material fact when the parties cross-moved for summary judgment. The structure of the accused device was undisputed; the parties’ disagreement over the meaning of the claim did not preclude a grant of summary judgment.
 
 See Intellicall, Inc. v. Phonometrics, Inc.,
 
 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed.Cir.1992) (“[Disagreement over the meaning of a term within a claim does not necessarily create a
 
 genuine
 
 issue of material fact.”). Resolution of the literal infringement question turned solely on the court’s interpretation of claim 1. Had the court properly construed claim 1, summary judgment in favor of Transmatic would have been required. We therefore reverse the court’s finding of no literal infringement.
 

 B. Willfulness
 

 Transmatic challenges both the district court’s determination that Transmatic had no right to a jury trial on the issue of willful infringement, as well as the court’s substantive conclusion that Guitón did not willfully infringe the ’415 patent.
 

 The court held that Transmatic waived its right to a jury trial by not objecting to an advisory jury until almost a month after the court’s October 4, 1993 order establishing a bench trial with an advisory jury. The court relied on Sixth Circuit law and Local Rule 7.1(h), which requires that any motion to alter or amend a judgment or order, or motion for rehearing or reconsideration, “shall be served not later than 10 days after entry of such judgment or order.”
 

 The question whether Transmatic waived its right to a jury trial under the district court’s local rule is a procedural matter not unique to patent law, and we therefore apply the law of the regional circuit.
 
 See Beckman Instruments, Inc. v. LKB Produkter AB,
 
 892 F.2d 1547, 1550, 13 USPQ2d 1301, 1303 (Fed.Cir.1989) (applying Fourth Circuit law to resolve the procedural matter of inconsistent jury findings). Under the applicable Sixth Circuit law, a party waives its right to a jury trial when it fails to timely object to a court order establishing a bench trial.
 
 Sewell v. Jefferson County Fiscal Court,
 
 863 F.2d 461, 464-66 (6th Cir.1988),
 
 cert. denied,
 
 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). Transmatic contends on appeal that its failure to object to the court’s October 4, 1993 order is not “comparable” to the failure to object in
 
 Sewell,
 
 but does not explain why this is so. Thus, as we consider
 
 Sewell
 
 to be controlling, we are unpersuaded that the court abused its discretion in finding
 
 *1279
 
 a waiver of the right to a jury trial and we affirm the court’s denial of a jury trial on this ground.
 

 The district court also held that, even assuming Transmatic’s objection to a bench trial was timely, Transmatic had no right under the Seventh Amendment to a jury trial on any of the issues remaining in the case, namely, infringement under the doctrine of equivalents, inequitable conduct, willfulness, and damages. 835 F.Supp. at 1028-33, 29 USPQ2d at 1542-47. In view of the court’s correct conclusion that Transmatic waived its right to a jury trial, we need not reach the court’s alternative holding.
 
 See SRI Int’l v. Matsushita Elec. Corp. of Am.,
 
 775 F.2d 1107, 1126, 227 USPQ 577, 589 (Fed.Cir.1985) (in banc) (Markey, C.J., additional views) (“[CJourts should not, unless compelled, decide constitutional questions.”);
 
 Ashwander v. Tennessee Valley Auth.,
 
 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Bran-déis, J., concurring) (“The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.”).
 

 A finding of willfulness requires that the fact-finder find, by clear and convincing evidence, that the infringer acted in disregard of the infringed patent with no reasonable basis to believe it had a right to do the acts in question.
 
 American Medical Sys. Inc. v. Medical Eng’g Corp.,
 
 6 F.3d 1523, 1530, 28 USPQ2d 1321, 1325 (Fed.Cir. 1993),
 
 cert. denied,
 
 — U.S.-, 114 S.Ct. 1647, 128 L.Ed.2d 366 (1994). This is a factual determination made after considering the totality of the circumstances.
 
 Id.
 
 We review the district court’s finding concerning willfulness for clear error.
 
 Id.
 

 On the merits of the willful infringement issue, the district court held that a finding of willfulness was inappropriate, primarily because Guitón had relied in good faith on its counsel’s opinion that the accused device would not infringe the ’415 patent or, alternatively, that the patent would be held to be invalid over the prior art. On appeal, Transmatic contends that the several legal opinions obtained by Guitón were conclusory and relied on erroneous propositions of law, and thus they were insufficient to demonstrate a good faith belief that the patent was invalid or not infringed. We are unpersuaded. The opinions prepared by Gulton’s outside counsel support the court’s conclusion that Guitón possessed a good faith belief that the ’415 patent would be held to be noninfr-inged or, alternatively, invalid. Thus, finding no clear error in the court’s analysis, we affirm the finding of no willful infringement.
 

 CONCLUSION
 

 We vacate the damage award and remand for the court to make further findings of fact and to reevaluate the amount of the award, if appropriate, in view of such findings. We reverse the finding of no literal infringement, vacate the finding of infringement under the doctrine of equivalents, and affirm on the other issues raised.
 

 COSTS
 

 Each party shall bear its own costs.
 

 AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED.