**BROCAR PRODUCTS, INC., Plaintiff,**

v.

**INSUL–TECT PRODUCTS CO.,**
**et al., Defendants.**

No. 3:97CV7421.

United States District Court,
N.D. Ohio,
Western Division.

March 12, 1998.

Sue A. Sikkema, Fuller & Henry, Toledo, OH, Gregory F. Ahrens, Wood, Herron & Evans, Cincinnati, OH, for, plaintiff.

Mark C. Schaffer, Gregg W. Emch, James F. Porcello, Jr., Charles R. Schaub, Emch, Schaffer, Schaub & Porcello, Toledo, OH, for defendants.

## Order

CARR, District Judge.

This is a patent infringement action in which plaintiff claims that defendants infringed his patent on an insulative cover assembly for P-trap drain pipes. This court has jurisdiction pursuant to 28 U.S.C. § 1338. Pending is plaintiff's statement of claim interpretation. (Doc. 27). For the following reasons, plaintiff's statement of claim interpretation shall be granted in part and denied in part.

### Background

Plaintiff Brocar Products, Inc., is the exclusive licensee of United States Patent No. 5,564,463 (the '463 patent), issued on October 15, 1996, which is directed to insulative cover assemblies for P-trap drain pipes. The '463 patent is a continuation-in-part of United States Patent No. 5,586,568 (the '568 patent), which, at the time the '463 patent was issued, was pending as application Ser. No. 08/271,439. (Doc. 28, ex. 1, col 1., lines 4–6). Defendants Insul–Tect Products Company (Insul–Tect) and Campbell Equipment Company (Campbell) are sellers and/or manufacturers of insulative cover assemblies that allegedly infringe the '463 patent.

On October 17, 1997, defendant Insul–Tect moved for initiation of claim interpretation proceedings pursuant to *Markman v. Westview Instruments*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). (Doc. 24). I granted Insul–Tect's motion. (Doc. 25). In response to my order, plaintiff filed a statement setting forth its interpretation of the disputed claims, and, particularly, of the language "operably coupled" and "overlappable" that appears in those disputed claims. (Doc. 27).

### Discussion

Plaintiff's patent teaches an insulative cover assembly for covering pipe drains. The assembly includes two cover pieces, one that is J-shaped, with a 180 degree bend at one end, and another that is L-shaped, with a 90 degree bend at one end. The patent teaches that the two cover pieces are coupled together closest to their respective bends to provide a continuous cover for drain pipes. In addition, each of the cover pieces is longitudinally slit so that it can be spread apart and slipped over a drain pipe.

The first disputed phrase is "operably coupling." Claims 1, 4, 16 and 19 relate to the coupling of the two cover pieces. Claim 1 claims:

> a portion of [the] second cover piece body proximate the 90 degree bend configured for **operably coupling** with a portion of [the] first cover piece body proximate the 180 degree bend such that the second cover piece completely covers the L-shaped pipe section, the juncture between the L-shaped pipe section and the J-shaped pipe section and the respective pipe nut; whereby the first and second cover pieces provide complete insulative and protective coverage of the P-trap drain piping assembly.

Claim 4, which speaks to three different diameters of the first cover piece does not contain any new disputed language, but, because it depends on claim 1, implicitly incorporates the phrase "operably coupling." Claim 19 repeats the language of claim 1 as it refers to operable coupling between the first and second cover pieces. Further, claim 16 claims an expanded diameter portion of the second, L-shaped cover piece "configured to overlap an end portion of [the] first cover piece proximate the 180 degree bend to **couple** said first and second cover together."

The second dispute concerns the meaning of the word "overlappable" as used in claims 7 and 18. Claim 7 claims:

> The insulative cover assembly of claim 1 further comprising elongated opposing edges adjacent a portion of the first cover piece slit, said first cover piece body dimensioned such that said edges are **overlappable,** one with the other, for sealing the slit along said slit portion to cover the pipe sections and secure the first cover piece to the pipe sections.

Independent claim 18 repeats the relevant language of claim 7. Claim 16, as shown above, includes the term "overlap," but uses it in reference to the coupling of the two cover pieces, and not the edges of a single cover piece. This reference is, however, instructive in determining what the term "ov-

erlappable" means as used in claims 7 and 18.

■ In interpreting patent claims, a court must first examine the intrinsic evidence in the record, including the language of the claims, the specification and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996). First, the court should look at both the asserted and non-asserted words of the claims, and, unless any special meaning appears from the specifications or the file history, should ascribe to those words their ordinary and customary meanings. *Id.*

■ Second, the court should analyze the specification, which "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id.* The specification is usually dispositive of the question of claim interpretation. However, preferred embodiments recited or demonstrated in the specification do not necessarily limit patent claims. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277 (Fed.Cir.1995). In other words, the fact that only certain configurations are described in the specification does not mean that a claim is limited to those particular configurations. *Id. See also Young Dental Mfg. Co. v. Q3 Special Products*, 112 F.3d 1137, 1143 (Fed.Cir.1997) ("limitations may not be read into the claims from the specification").

■ Finally, a court should look to any prior art cited in the patent application when determining the precise scope of the inventor's claims. *Vitronics*, 90 F.3d at 1582–83. Prior art can be a useful tool in interpreting claims because it indicates what has been claimed in previous patents and therefore what can properly be claimed by the new patent holder. *Id.*

■ If an examination of the intrinsic evidence leaves a court in doubt as to the interpretation of the claims, extrinsic evidence, such as expert testimony, may also be considered. *Id.* at 1583. If the claims are unambiguous, however, expert testimony is unnecessary and entitled to no weight. *Id.* Because both parties concede that the claims in dispute are unambiguous, only intrinsic evidence need be considered in interpreting the claims.

### 1. Operably Coupling

■ Plaintiff claims that, to a person of ordinary skill in the pertinent art, the phrase "operably coupling" as used in claim 1 means:

> structure and configuration of the adjacent ends of the J-shaped and L-shaped cover pieces whereby these cover pieces cooperate to provide complete insulative and protective coverage of the P-trap drain piping assembly.

Plaintiff asserts that this definition of "operably coupling" includes not only radially adjacent cover pieces, but also cover pieces that abut each other in such a way as to completely cover the drain pipe and thereby protect any person coming into contact therewith from burns or abrasions. Thus, plaintiff argues, both figures 1 and 2 of its exhibit 3 depict operably coupling configurations. (A copy of plaintiff's exhibit 3 is attached hereto.)

Defendants, on the other hand, claim that the phrase "operably coupling" defines:

> a structure, wherein the adjacent ends of the J-shaped and L-shaped cover pieces do not merely 'abut,' but rather are engaged and 'coupled' in such a manner that they form a continuous insulative cover at the pipe juncture and eliminate ridges, slits and openings which have a tendency to trap dirt and other bacteria around the coverings and pipes.

Defendants' interpretation of "operably coupling" thus would not include abutting pieces, but only those that are engaged or "coupled." Defendants do not, however, provide definitions for the terms "engaged" or "coupled" other than to make clear that those terms do not include cover pieces which merely "abut." Further, defendants claim that, because one of the purposes of the insulative cover assemblies of the '463 patent is to minimize build-up of dirt and other bacteria, "operably coupling" should be interpreted to include only those "engagements" that eliminate all ridges, slits and openings that can trap such dirt and bacteria.

Plaintiff claims that abutting pipe covers provide a complete insulative cover and are not subject to forces that cause them to move or shift, and, therefore, persons coming into contact with the pipe covers are protected against burns and abrasions. Thus, plaintiff asserts, abutting cover pieces are "operably coupled" within the meaning of the '463 patent. Defendants rebut this, and, relying on a photograph of their product and a statement by Michael Gianandrea, president of Insul–Tect, assert that it is possible for abutting pipe sections to shift, and, therefore, permit dirt and bacteria to build up. I cannot rely, however, on a self-serving statement by a defendant's president, supported only by a posed photograph of shifted pipes, to exclude an otherwise proper interpretation of a claim term.

The chief purpose of the invention is to protect disabled persons from abrasions or burns due to exposed or poorly insulated drain pipes. (Doc. 28, ex. 1, col. 1, lines 19–20). The record demonstrates, however, that the invention taught by the '463 patent is also intended to meet earlier shortcomings in the art, including a tendency of dirt and bacteria to gather at slits, opening and ridges in the pipe and cover assembly. (*Id.* col. 2, lines 16–19 and lines 42–44). The clear, unambiguous description of the invention itself, together with the explanation of its purpose and use, demonstrate that "operably coupling" refers to a configuration that protects against burns and abrasions *and* minimizes openings which have a tendency to trap dirt and other bacteria around the coverings and pipes. This definition does not preclude cover pieces that abut if such pieces in fact provide a complete, insulative cover that meets both of these goals. The unsupported allegation that abutting cover pieces tend to shift and therefore cannot protect against build-ups of dirt and bacteria is an insufficient basis on which to exclude all abutting cover pieces from the definition of "operably coupling" configurations.

Despite my ultimate agreement with plaintiff's interpretation, I do not find much merit in its claim differentiation argument. Plain-

tiff argues that, if defendants' interpretation of "operably coupling" as excluding pipe covers that abut were accepted, claim 16, which claims a configuration of the cover pieces such that they overlap, would be superfluous. Apparently, plaintiff is asserting that defendants have interpreted "operably coupling" to mean "overlapping." This assertion is simply not true, and, as defendants concede, there are other configurations, besides an overlapping one, that may meet the definition of "operably coupling." [1]

## 2. Overlappable

■ Plaintiff claims that the term "overlappable" should be construed to mean that:

the opposing edges adjacent the longitudinal slit in the cover piece are dimensioned and configured so that at least a portion of each edge extends over and covers a part of the opposing edge so as to seal the slit along its length to cover the pipe sections and to secure the cover pieces to the pipe sections.

According to plaintiff, this definition includes a "tongue-in-groove" structure as depicted at figures 2A and 2B of plaintiff's exhibit 4. (A copy of plaintiff's exhibit 4 is attached hereto).

Defendants supply no alternative interpretation of "overlappable." They assert, however, that an "overlappable" configuration cannot include a "tongue-in-groove" structure, because the specification of the '463 patent explains that "overlapped" edges decrease the effective diameter of the elongated pipe cover. *See* Doc. 28, ex. 1, col. 6, lines 48–55. Thus, defendants interpret "overlappable" to include only those configurations in which one opposing edge extends over and covers the other edge, lying on top of that edge, such that the diameter of the pipe cover is decreased from the size it would be if the edges abutted one another.

■ Based on my review of the intrinsic evidence, I cannot agree with plaintiff's definition of overlappable to include a "tongue-in-groove" configuration. The '463 patent includes several illustrations, two of which depict a configuration in which one edge begins

---

1. For instance, tongue-in-groove fasteners or tab-in-slot fasteners might be considered "operably

coupling" configurations under the definition of claim 1.

to form a larger diameter and lies on top of the other edge. (Doc. 28, ex. 1, figs. 4 and 5). The specification describes these figures, but not the other figures, as having "overlappable" edges. (Doc. 28, ex. 1, col. 6, lines 48–58). While the specification cannot be used to limit otherwise broader claims, *see Transmatic, supra* and *Young Dental, supra,* in this case, the embodiments are not being used to limit the claim, but to clarify what "overlappable" means as used in the claim. The fact that only two of the figures are described as "overlappable" indicates that the others, which depict flanges that bend out perpendicularly to the cover piece, are not considered to have overlapping edges. Therefore, the term "overlappable" appears to have a more limited meaning than that ascribed to it by plaintiff.

Further, the '568 patent, incorporated into the '463 patent and relied on heavily by plaintiff in interpreting "operably coupling," demonstrates that tongue-in-groove fasteners are not considered overlapping, as least in connection with the subject invention. Figures 8A and 8B of the '568 patent illustrate three different types of fasteners that may be employed to fasten opposing edges of a collar pipe cover: 1) a tab and opposing slot which receives it and holds the opposing ends together; 2) a hook and loop fastener, which might use a tradename product such as velcro, in which the opposing ends would overlap; and 3) a tongue and groove which receives the tongue to fasten the opposing ends. The hook and loop configuration shown in figure 8A of the '568 patent is identical to figures 1A and 1B of plaintiff's exhibit 4, and the tongue-in-groove configuration of figure 8B is identical to figures 2A and 2B of exhibit 4.

The specification that describes the three embodiments of the '568 patent explains only the second of the three, the hook and loop configuration, as overlapping. The '568 patent's differentiation between these three embodiments therefore indicates that the respective edges of a "tongue-in-groove" fastener do not overlap.

The '568 patent has been incorporated in the '463 patent, and, therefore, its language, embodiments and specifications are relevant to an interpretation of the '463 patent's claims. Because the '568 patent reveals that a "tongue-in-groove" configuration is not just an alternate manner of overlap, as plaintiff contends, but is rather an alternative fastening structure, I cannot agree with plaintiff's broad interpretation of the term "overlappable" as used in the '463 patent claims.

### Conclusion

Based on my review of the claims, the specification and the prior art of the '463 patent, I conclude that "operably coupling" should be interpreted as:

> configuration of the adjacent ends of the J-shaped and L-shaped cover pieces whereby these cover pieces cooperate to provide complete insulative and protective coverage of the P-trap drain piping assembly such that the assembly protect against burns and abrasions and minimizes openings which have a tendency to trap dirt and other bacteria around the coverings and pipes.

This interpretation does not exclude abutting cover pieces that meet the twin goals of protection against injury and minimization of dirt and bacteria. Indeed, "operably coupling" configurations might include overlapping, abutting, tab-in-slot and "tongue-in-groove" structures that protect against injury and minimize filth.

Further, I find that the term "overlappable" as used in the '463 patent means that:

> the opposing edges adjacent the longitudinal slit in the cover piece are dimensioned and configured so that one opposing edge extends over and covers the other edge, and lies on that edge, such that the effective diameter of the pipe cover is decreased, sealing the slit along its length to cover the pipe sections and securing the cover pieces to the pipe sections.

This definition excludes the "tongue-in-groove" configuration depicted by plaintiff, and any other configuration in which one edge does not extend over and cover the other in such a way as to decrease the diameter that the pipe cover would have if the edges met head on.

Accordingly, it is hereby

**ORDERED THAT** plaintiff's statement of claim interpretation (Doc. 27) be, and same hereby is, granted in part and denied in part.

**So ordered.**

PLAINTIFF'S EXHIBIT 3

"OPERABLY. COUPLING"

L-SHAPED SECTION

J-SHAPED SECTION

Fig. I

L-SHAPED SECTION

J-SHAPED SECTION

Fig.2

PLAINTIFF'S EXHIBIT 4

"OVERLAPPABLE"